

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division

**THOMAS SOLOMAN VANN, JR.**                                                                                      **PLAINTIFF**

V.                                    Civil Action No. 3:22-cv-658 CWR-LGI

**THE CITY OF MERIDIAN MISSISSIPPI,
DEBORAH NAYLOR-YOUNG, in her official and individual capacity
PATRICK GALE, in his official and individual capacity and
CHRIS READ, in his official and individual capacity,**                                    **DEFENDANTS**

### COMPLAINT
**JURY TRIAL DEMANDED**

Comes now the Plaintiff Thomas Soloman Vann, Jr., by and through his attorney, James A. Williams, and files his **Complaint**, showing the following in support, to-wit:

### Jurisdiction and Venue

1.    (i) This is an action under Title VII of the United States Code, 42 U.S.C. §2000 *et seq..*, Section 1983 of Title 42, 42 U.S.C. § 1988, (b), the *Civil Rights Attorney's Fees Awards Act of 1976* and state law claims.

(ii) The Court has jurisdiction of the parties and the subject matter, being the right to be free from retaliation, in this case, the Defendants' acts of retaliation for Vann's claiming race discrimination in the Civil Service System of promotions and other complaints by Vann, Vann's First Amendment Right of Free Speech and finally for violations by the Defendants of Vann's contract rights under the Defendant City's Civil Service System.

(iii)  Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission on July 18, 2022 which charged "retaliation" by the Defendant City because Vann complained of racial discrimination/retaliation. The latest act was the Defendants City, Young and Gale, and derivatively Defendant Read, as explained below, opposition at the hearing on May 10, 2022, by the City's Civil Service Commission of Vann's appeal of his termination. Defendant Read

was the Police Chief who targeted Vann for termination and who compiled alleged foundatonal proof of reasons for such adopted and used by the other Defendants at the hearing to oppose Vann's appeal.

(iv) On August 16, 2022, the Commission issued its Right to Sue Letter, a copy of which is attached as **Exhibit "A"** and incorporated herein by reference. This Action was filed within ninety(90) days of Plaintiff's receipt of that Letter.

(v) Plaintiff request a jury trial.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343 and a Jury Trial is Demanded.

3. The actions of the Defendants, hereafter alleged to be in violation of Federal Statutes and general law, were committed within the Southern District of Mississippi.

## PARTIES

4. (i) Plaintiff: Thomas Soloman Vann, Jr., a resident adult natural citizen of Lauderdale County, Mississippi, residing at 519 -34th Avenue, Meridian, Mississippi 39307. and

(ii) Defendants: (1) **The City of Meridian**, Mississippi, a state-chartered municipal corporation of the State of Mississippi, which conducts employee relations under a mandatory statutory system of Civil Service, through a statutorily-created Civil Service System and has an address of 601 - 23rd Avenue, Meridian, Lauderdale County, Meridian, Mississippi 39301.

(2) **Deborah Naylor-Young**, in her official capacity at relevant times as Chief of Police of the City of Meridian and individually;

(3) **Patrick Gale**, in his official capacity at relevant times as acting Captain over the Criminal Investigation Division of the Police Department of the City of Meridian and in his individual capacity;

(4) **Chris Read**, in his official capacity at relevant times, as Chief of Police of the City of Meridian and individually.

## Facts

(Note: Many of these factual allegations have appeared in Plaintiff's proposed *Third Amended Complaint* in No. 3:21-cv-00305-DPJ-FKB, herein, which is pending filing permission)

5. In 2008, Vann applied for the job of police officer patrolman in the Police Department of the City of Meridian, in response to a Civil Service Commission announcement of that opening and, after testing and interview, he was hired by the City of Meridian and came under the Civil Service System of employee relations under which the City hired, promoted, disciplined and discharged its employees.

6. (i) Vann had substantial outstanding experience in the United Sates Army rising to rank of Sergeant First Class and managing some 60 soldiers in the Kosovo action, and after retirement, within 3 month began did outstanding service of 5 years with the Sheriff's Department of Lauderdale County, Mississippi, first as jailer and then road patrolman.

(ii) While with the Sheriff, Vann attended Meridian Community College obtaining an Associate Degree in Accounting in 2006 and as City patrolman continued his education until 2012 with emphasis in construction engineering.

(iii) As a patrolman in the City's Police Department, within fifteen months, Vann became a Senior Patrolman and from that job the City designated Vann as the Housing Liaison officer, a non-supervised position which Vann held for three years.

(iv) In February, 2011, Vann took the Civil Service exam for corporal, passed his first test for that position and became a corporal in the Police Department.

(v) In 2013, Vann took the Civil Service test for Detective, passed that test and became a Detective corporal in the Criminal Investigation Division of the Police Department.

(vi) While Detective, Vann's work was outstanding i.e. other Detectives sought his advice on investigating and preparing cases for transfer to the District Attorney's office and Vann's cases were very rarely returned by that office for further work.

(vii) Vann had a significantly higher work load than other Detectives, but his performance was still outstanding.

**General Treatment of Blacks in Criminal Investigation Division**

7. (i) When the City in 2017 promoted Jay Arrington to Captain of CID, a habit and custom within the Police Department occurred of harassment of Blacks.

(ii) Several Black policeman made complaints to Black Chief Bennie Dubose but Arrington wasn't disciplined and the harassment continued.

(iii) Arrington also held the position of Internal Affairs Officer, whose duty it was to investigate complaints against officers.

8. (i) Arrington repeatedly belittled Vann's work in front of his peers and had a white co-equal detective "check on" Vann's work on a case with Vann confronting Arrington that he(Arrington) had a radio why hadn't he, himself, just called Vann.

(ii) In 2018, Arrington joined a knowingly falsely accusation of Vann in open court, with civilian witnesses present, of Vann having altering an issued arrest warrant,

(iii) Thereupon Vann made a general race mistreatment complaint to the City's Human Resources Officer, Chrissie Walker, about Captain Arrington but after she only asked Vann had he talked to Police Chief Bennie Dubose, Vann resorted to the "chain of command" and he complained of Captain Arrington's racial harassment to Black Detective Sergeant Chris Scott. He hadn't so he went though the "chain of command", first to Black Sergeant Chris Scott, who did not give Vann leave to take his complaint on up, then, after waiting, Vann returned to Scott who orally, but not in writing told Vann to go to Chief Dubose, but since Scott didn't authorize in writing for Vann to proceed with his racial harassment complaint, Vann dropped it, explaining he had too much work to do, but left Scott with the promise that if such happened again, Vann would "hire a lawyer".

**Retaliatory Harassment of Vann by Excessive Case Assignments**

*Domestic Violence Investigator*

9. (i) In March 2018, Sgt. Scott assigned Vann exclusively to Domestic Violence cases involving the State-mandated case investigative/reporting protocol, but Vann continued on the Violent Crime Unit and was preferred for complex commercial embezzlement..

(ii) However while the two white predecessor domestic violence officer dealt only with domestic violence, VAnn still was assigned regular detective cases.

(iii) In March 2020, a domestic violence replacement officer was assigned to Vann for training and with her taking major work on new cases and after only 3 months, the replacement quit and all her cases were thrown upon Vann.

(iv) Vann continued with this double tasks of domestic violence and special and regular detective work until he was demoted to patrol on April 7, 2021.

*Other Excessive Case Assignments to Vann.*

10. (i) From March 2018 to June 2020 Sgt. Scott and a de facto supervisor civilian, Barbara Dubose, contrary to normal procedure that if a Detective answered the initial call, it was his case, assigned Vann as exclusive detective after initial investigation by another Detective.

(ii) In other words, Vann was thrown mid-stream of a major crime investigations, e.g. murders, rape, aggravated assaults and large commercial fraud with Vann nearly consistently finding the initial case investigation was woefully incomplete.

(iii) Vann persisted and remarkably continued to produce cases ready for indictment with little, if any, "kickback" from the District Attorney's office.

**Racial Discrimination in Promotions**

11. (i) In May/June 2019 on the Sergeant/Lieutenant civil service tests, , Vann respectively scored third and second and was placed on the promotion lists for those positions valid until June 5, 2020.

(ii) Though Vann, while detective, had assisted other detectives where accounting skills were needed and was often called upon generally to assist other detectives because of his success in preparing cases for Grand Jury, Vann was never promoted while on the active promotion list despite several openings in the Police Department.

(iii) The promotions were handed out to 7 whites and 3 Blacks, some not even on the list, with 2 whites promoted even twice to fill simultaneously two ranking vacancies and some promoted unquestionably being less qualified than Vann.

(iv) Lou Robbins who served as Acting Chief during April and May 2020 wanted to promote Vann, but, as Robbins said, he was told by higher ups that Vann "didn't know his job" and thus Mr. Robbins did not promote him to vacant positions. No doubt Vann knew his job.

(v) On May 26, 2020, 10 days before the list expired and with only 6 promotions open, Vann complained to Black Chief Charles Coleman, who told him to do a "bio", but meantime the Chief filled 3 promotions with 2 white males.

(vi) In July, despite the promotion list having expired June 5, Chief Coleman promoted a white male to Lieutenant, a vacant promotion opportunity that had been vacant and available when Vann earlier had approached for Coleman about not being promoted.

12.       (i) Vann was naturally favored for promotion due to his practice of good police work, which he openly fostered among his colleagues, in furtherance of successful crime solving, apprehension, conviction and punishment but he was not promoted, while other Whites were, who had not passed the appropriate test nor had nearly equivalent successful performance and experience as he had.

(ii) There was a consistent disregard of testing for positions, e.g. Lieutenant, Sergeant and Captain.

(iii) The supervisors within the City's Police Department routinely violated, with impunity and no appeals, the standards for discipline and promotions set forth in the Civil Service Code enacted under stautory-mandate by the Defendant City.

(iv) The Defendants did so violate this Code during all relevant times herein and as somewhat more detailed elsewhere by Plaintiff Vann.

13. In the Summer of 2020, Vann complained to recently promoted Lieutenant Keith Moody about failure to be promoted and, after Moody said there were no more promotions, Vann went to the City's Equal Opportunity office but did not file a formal complaint of race discrimination, but instead started looking for an attorney.

### *Demotion to Patrol*

14. (i) After Vann's attorney on January 15, 2021 served the City with a State Tort claim Act "Notice of Intent to Sue", followed by Vann's obtaining an EEOC "Right to Sue" letter on February 14 2021, the Defendants, in direct, malicious and wilful retaliation for Vann's persistent exercise of his Freedom of Speech and because Vann was no taking his complaints to Court, kicked Vann out of CID, re-assigned him to night shift Patrol, though his seniority guarded against the night shift.

(ii) The only explanation from Defendant Lieutenant Gale, when Vann asked him why, was "I'm tired of this shit" and when Vann inquired of Sergeant Otha Sanders, his remarkably revealing explanation was: "This came from the Top."

(iii) "The Top", Vann alleges references Defendant Read and the previous Mayor, Percy Bland.

15. (i) On April 30, 2021, Vann's federal civil action was filed, then served on the City.

(ii) On May 19, 2021, with Vann's office vacant for 7 weeks, with his active cases not debriefed by him to a successor detective, three supervisors, among them Defendant Lieutenant Gale entered his office and expressed contrived and false disbelief as to case evidence there Vann had logically arranged in his office evidence Locker.

(iii) Despite, the commonly known fact that all Detectives accumulated case evidence in their offices, in retaliation, the Defendants Read and Gale chose to conclude that such justified

Vann being terminated and recommended his termination to then Mayor Percy Bland, and in that regard falsely made a list of violations under the Civil Service Code.

(iv) That list of infractions was common among the CID officer, but others nearly consistently were not subject to discipline, though the "gun" accusation would apply in some instances but the Defendants and their predecessors did not seek termination.

(v) The usual storage place for evidence, the Evidence Bay was a hodgepodge of evidence deposited there in a random, disorganized, unidentifiable manner, made more so by the habit and custom of one detective just making himself a deposit space for his evidence while pushing aside other's evidence.

(vi) Then Mayor Bland did not act on the termination recommendation and was replaced July 1, 2021, by newly elected Mayor Jimmie Smith.

(vii) Vann took medical leave May 24th through mid September and worked as patrolman until November 29, 2021 contrary to the explanation that Vann had not returned to work January 28, 2022, this advanced as the "reason" reason it fell to Mayor Smith to accept that late May, 2021 Defendant Read recommendation for termination.

(viii) His civil action in this Court was on-going in this Court and in January, 2022, Vann had rejected a settlement offer from the City to resign and receive some financial payment.

(ix) The Defendants, it is alleged upon information and belief, in retaliation for Vann not taking the settlement but continuing his partially race-based suit, began again the process of termination against Vann, alleging the very same infractions Defendant Read had itemized in May 2021.

(x) Vann timely appealed Mayor Smith's termination action to the Civil Service Commission.

(xi) The Plaintiff in this process gave detailed explanations of his previous unfair treatment, some racially tinged, but the Defendant City in its response and in its oral testimony at the

Commission hearing on May 10, 2022, made absolutely no contradiction of Vann's position. Instead, it focused the previous "evidence handling violation" on the "gun" infraction.

(xii) Defendants Gale and Human Resources officer Chrissie Walker testified at that hearing with Gale saying it was a clear rule violation for a Detective to keep case evidence in one's office and to emphasize the "gun" infraction, this despite each Detective had an "evidence" locker in which to keep evidence while they analyzed it. Chrissie Walker gave the false testimony that Vann had not worked since May 24, 2021 giving that as a reason for the late January 2022 Mayor Smith termination upon the recommendation of Defendant Young.

(xiii) The Commission in its decision concluded that Vann, if he was overworked, should have simply emailed his supervisor Otha Sanders for relief, thus it totally dis-regarded the voluminous written accusations covering most subjects herein discussed that gave rise to Vann's allegedly strong accusation of, e.g. the habit and custom of all Detectives to keep evidence in their officers and the inconsistent application of discipline and racially discriminatory promotions and wilful failures in general by the Defendant City to comply with the Civil Service Code in its employee relations.

16. (i) The City of Meridian conducts employment, tenure of employment and its relations to its employees under a State-mandated Civil Service System, and is subject to the Mississippi Statutes that regulate those relations.

(ii) The City is under a contractual duty to each of its employees to comply with tremendous fairness and due process in promotions, requiring them to be done based upon merit and as for discipline such is progressive, focused on improvement and equal treatment among employees for like infractions.

(iii) There is a right to appeal to a neutral body, the Civil Service Commission, which determines if discipline is fairly enforced, equivalent discipline for similar cases, discipline in all cases, and other merit standards, under the standard of only actions contrary to the "public service" are justifiably the subject of discipline.

17. (i) Here the Defendants violated Vann's vested contract rights and the covenant of good faith by showing favoritism to white employees in promotions and discipline and not operating its employee relations according to merit.

(ii) The Defendants maliciously harassed Vann, by excessive case assignment and unfair discipline because he had complained of the City's habit and custom of using race in its promotions and in its general treatment of its Black police officers and violations of the Civil Service Code.

(iii) The City penalized Vann for stating complaints of racism in the City's employee relations and making those complaints public in total and malicious disregard of his Right to Free Speech.

18. (i) Vann was a public servant and citizen of high standing and integrity and fairness in the Community and among his work associates and was known for his dependability.

(ii) Vann was a dedicated and practicing member of the Christian Faith and known as beyond reproach in his business, social and personal relations with others..

19. (i) The Defendants acted in a malicious and wilful manner in its treatment of Vann as a police officer and as a human being.

(ii) As a direct, foreseeable consequence, Vann suffered tremendous mental anguish, from the wilful and malicious actions of the City and Vann was frustrated over the probability of his victims not getting justice.

(iii) As a direct consequence, Vann could not sleep, could not rest and his mind was totally upset.

(iv) He lost weight and went into isolation from his numerous public activities, crying uncontrollably several nights.

(v) Vann became paranoid because when he had disclosed the race discrimination to Lt. Moody in June 2020 and then a couple of months later when they fired Moody from CID, he(Moody) disclosed to Vann that "they" were after him and he'd better be careful and watch what

he was doing thus Vann became afraid that someone was going to harm him and any noise at night caused him to get up and run through the house with his gun.

(vi) Vann lost trust in everybody.

(vii) Vann on May 24, 2021 and through at least July 2022 has suffered from diagnosed anxiety and depression, directly and for seeably as a consequence of the actions of the Defendants.

### First Claim for Relief

20. As a direct, foreseeable and intentional consequence of the racially malicious actions of the Defendant in violating Vann's right not to be retaliated against for pursuit of complaints and racial discrimination under Title VII, Vann suffered the following damages:

(i) loss of the right to be free from retaliation for expression of complaints concerning racial discrimination in the workplace, suffering damages of $800,000.00;

(ii) loss of wages and benefits from the Defendants' retaliatory termination in the amount of $80,000.00 and loss of wages and benefits in the future of $200,000.00; and

(iii) punitive damages in the amount of $500,000.00 for the intentional and malicious retaliation of the right to pursue a claim of racial discrimination in employment, to be imposed jointly and severally.

### Second Claim for Relief

21. (i) Plaintiff alleges that he suffered denied his Freedom of Speech and is entitled to damages therefrom under Section 1983 of Title 42 of the United States Code.

(ii) If Vann had not complained to his superiors that he was being harassed by reason of his race and then eventually gave notice to the Defendant City of Meridian of an Intent to Sue under State law and actually sued the City under Title VII, he would not have been demoted to Patrol, placed on the night shift despite his seniority and then subjected to termination.

(iii) Vann alleges that his speech involved the matter of public concern that there not exist within the Defendants' operation of the employment system within the Police Department

and advancement of members of the Civil Service system, any racial preferences, non-meritorious promotions and consequent corruption of the City's operation of its Police Department that denied the occupants of the City of Meridian good law enforcement as guaranteed them under the Civil Service System.

(iv) As a direct and consequential result of these malicious and intentionally improper actions, some of which have been stated previously, Plaintiff Vann has been damaged in the amount of $750,000.00 and suffered punitive damages in the amount of $ 1,000,000.00.

### Third Claim for Relief

22. (i) Plaintiff Vann alleges that the United States District Court has jurisdiction of this Claim under State Law, since it arose out of the nucleus of operative facts he has previously alleged.

(ii) Vann had a vested right to his employment as a member of the Civil Service System that Defendant Citiy of Meridian was statutorily mandated to follow in its hiring, discipline and promotion of employees and the City wilfully, maliciously and intentionally denied him his right to be fairly treated for his conduct and actions as a Detective employee of the City, his right to fair application of discipline, equal treatment as others for comparable infractions, right of expectancy of promotions on merit and not race or non-meritorious promotions.

(iii) Vann alleges that his previous allegations show he was highly qualified for promotion proven by his high level of performance and the habit and custom of other Detectives coming to him for guidance on their investigations, but the City intentionally denied him his rights under the Civil Service Code and thus he was damaged directly and consequentially in the amount of $1,000,000.00.

(iv) Vann alleges that the intentional and malicious denial by the City of his vested rights under the Civil Service Code justifies punitive damages be imposed in the amount of $500,000.00 against the Defendants, jointly and severally.

## ATTORNEY'S FEES

Plaintiff shows that he is entitled to a reasonable attorney's fee under Title VII, Section 1983, 42 U.S.C. § 1988 and for malicious violation under State Law of his vested employment rights.

## PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court:

A.   enter a judgment against the Defendant for compensatory and punitive damages for violations of Title VII through their retaliation for his pursuit of claims of race discrimination in employment in the amount $1,500,000.00;

B.   enter a judgment against the Defendants, jointly and severally, for compensatory and punitive damages for violations of his First Amendment Right to Free Speech in the amount of $1,750,000.00;

C. enter a judgment against the Defendants, jointly and severally, for violations of his vested contract rights created by his appointment as a member of the Civil Service System of the City of Meridian in the amount of $1,500,000.00;

D.   enter a judgment for reasonable attorney's fees and all costs of court against the Defendants.

E.   grant such other relief as shall be meet and proper in the premises.

Respectfully submitted.

_____
Thomas Soloman Vann, Jr., Plaintiff

s/James A. Williams
James A. Williams, MB # 7270
Attorney for Plaintiff
P.O. Box 5002
Meridian, Ms 39302-5002
Phone: 601-693-3881
Facsimile: 601.693.3873
e-mail: jwilliamslaw@bellsouth.net

## VERIFICATION

COUNTY OF LAUDERDALE, STATE OF MISSISSIPPI

    After being first put upon my oath or affirmation, I, Thomas Soloman Vann, Jr., do hereby depose and state that the facts, matters, circumstances and claims set forth in the above **Complaint** are true and correct.

    This November 9, 2022.

_____
Thomas Soloman Vann, Jr.

Sworn to and subscribed before me by Thomas Soloman Vann, Jr. on this the 9th day of November, 2022.

MY COMMISSION EXPIRES:
05/21/23

_____
NOTARY PUBLIC

STATE OF MISSISSIPPI
PEGGY EMERSON
NOTARY PUBLIC
ID No. 84119
Commission Expires
May 21, 2023
LAUDERDALE COUNTY